**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Narcissa Baymon,<br><br>             Plaintiff,<br><br>vs.<br><br>CVS Caremark Pharmacy Incorporated, et al.,<br><br>             Defendants. | No. CV-23-00741-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant CVS Caremark Pharmacy Inc.'s Motion for Summary Judgment (Doc. 73) and accompanying Statement of Facts (Doc. 74). Plaintiff Narcissa Baymon did not file a Response, and the time to do so has passed. The Court now rules as follows.[1]

**I.   BACKGROUND**

The facts are stated here in accordance with Defendant's Motion and Statement of Facts. (Docs. 73, 74). As noted above, Plaintiff did not oppose Defendant's Motion for Summary Judgment. In addition, the allegations in Plaintiff's TAC may not be considered because it is not a verified complaint. *Cf. Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *see Cupples v. Cath. Charities Cmty. Servs. Inc.*, No. CV-22-08183-PCT-DWL, 2022 WL 16640683, at *2 (D. Ariz. Oct. 17, 2022) ("Although Plaintiff includes a

---

[1]   Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1

certification at the conclusion of his complaint that it complies with Rule 11, that is not the same thing as verification under penalty of perjury.").

Therefore, Plaintiff has set forth no facts in opposition to Defendant's Motion. In assessing an unopposed summary judgment motion, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

Plaintiff is a former employee of Defendant CVS who worked as a Benefits Verification Representative-Lead. (Doc. 74 at 1, ¶ 1). She was hired in November 2015. (*Id.*). Plaintiff is a Black woman and "suffers from PTSD, anxiety, depression, and bradycardia." (*Id.*). This case surrounds Plaintiff's claims of race and disability discrimination against her former employer.

Throughout her employment at CVS, Plaintiff received several accommodations: a "pregnancy-related reduced schedule" in 2016-2017, maternity leave in 2016, workstation accommodations, leave in 2017 to care for a family member, and two periods of continuous medical leave in 2018. (*Id.* at 6–7, ¶ 34). Relevant here is Plaintiff's accommodation for "eight hours of intermittent leave per month from January 8, 2019, to August 3, 2019, to allow Plaintiff to attend medical appointments related to her depression, anxiety, and PTSD." (*Id.* at 7, ¶ 35). Defendant also gave Plaintiff "the ability to change her schedule with manager approval." (*Id.*).

Also relevant to this case are disciplinary infractions issued to Plaintiff during her employment. On January 9, 2019, Plaintiff "received a Final Warning" from her supervisor "for violating CVS' Personal Electronic Device policy, being dishonest about violating the policy, and engaging in combative behavior when receiving feedback." (*Id.* at 2, ¶ 7). Plaintiff raised concerns about the Final Warning to Human Resources, but a review showed that the discipline was justified. (*Id.* at 3, ¶ 10). Plaintiff's supervisor, Tameka Brown ("Brown"), addressed Plaintiff's absences from work through formal disciplinary procedures. (*Id.* ¶ 12). Plaintiff's supervisor issued a "Level I Coaching" for 16.25

2

unauthorized absences, which was later retracted after Brown learned that Plaintiff was authorized for approved absences. (*Id.* at 4, ¶¶ 13–14). However, after Plaintiff arrived late to work on five separate occasions and had several unapproved absences, Brown issued another "Level I" to Plaintiff on May 10, 2019. (*Id.* ¶¶ 15–18). After continued unapproved absences, Brown issued Plaintiff "a Level II-for accruing 8.5 unauthorized absences" on July 1, 2019. (*Id.* at 5, ¶ 22). Plaintiff asserts that she was authorized to use her intermittent leave for some of those absences. (*Id.* ¶ 23).

Brown also took disciplinary steps with respect to Plaintiff's account processing errors. (*Id.* ¶ 24). Brown "verbally counseled Plaintiff on three occasions for improperly processing accounts" in April and May 2019, and Plaintiff eventually received a Level I infraction for these errors. (*Id.* ¶¶ 25–27). On June 6, 2019, Brown issued Plaintiff a Level III-Final Warning for a benefits verification error on a high-profile account. (*Id.* ¶¶ 28–29). Finally, on July 9, 2019, Brown issued Plaintiff a Level IV infraction and terminated her employed after Plaintiff "misquoted a patient's copayment for a medication as $0.00." (*Id.* at 6, ¶¶ 30–32).

This lawsuit also concerns Plaintiff's transfer and promotion attempts. In 2017, Plaintiff applied but was not selected for several open positions within the company located in Nashville, Tennessee. (*Id.* at 8, ¶ 42). The positions were Pharmacy Supervisor Field Management, Customer Service Manager, and Customer Care Supervisor. (*Id.*).

During and after her employment, Plaintiff filed two internal ethics complaints within the company and two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). First, Plaintiff filed ethics complaints on October 18, 2016 and May 30, 2017, which surrounded workplace conduct. (*Id.* at 7, ¶ 38). Plaintiff also filed two EEOC charges. (*Id.* at 7–8). Plaintiff filed the first charge on September 25, 2017, stating that Defendant discriminated against her based on her race and disability, that she was retaliated against for filing internal complaints, and she was not transferred or promoted. (*Id.* at 7, ¶ 37). After she was terminated, Plaintiff filed a second charge, asserting that Defendant discriminated against her based on race and disability, issued

3

unwarranted discipline, and terminated her employment. (*Id.* at 8, ¶ 41).

Plaintiff, proceeding *pro se*, initiated this action by filing a complaint on May 1, 2023. (Doc. 1). On May 17, 2024, Plaintiff filed a Third Amended Complaint ("TAC"), the operative complaint in this matter. (Doc. 48). Plaintiff brings claims for (1) violation of equal rights under Title VII, 42 U.S.C. § 1981, (2) retaliation in violation of 42 U.S.C. § 2000e-2, and (3) termination of employment in violation of the Americans with Disabilities Act under 42 U.S.C. § 12112(a). (Doc. 48 at 6–10). On August 15, 2025, Defendant filed the Motion for Summary Judgment and Statement of Facts. (Docs. 73, 74). On September 24, 2025, Plaintiff filed a Motion for Extension of Time to respond to the Motion for Summary Judgment. (Doc. 76). The Court granted the Motion, setting a response deadline of October 29, 2025. (Doc. 77). Plaintiff did not file a Response, and the deadline to do so has passed.

## II. LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id*. at 322–23. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

"While a district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition . . . an unopposed motion for summary judgment should be granted if the movant's papers are sufficient by themselves to show the absence of a dispute of material fact and that they are entitled to judgment as a matter of law." *France v. Allman*, No. 15-cv-04078-JSC, 2016 WL 7439577, at *1 (N.D. Cal.

4

Dec. 27, 2016) (citing *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001)).

### III.  DISCUSSION

Defendant moves for summary judgment on all of Plaintiff's claims and asks the Court to grant the Motion and dismiss the lawsuit in its entirety. (Doc. 73 at 19).

### A. Claim One: Violation of Equal Rights in violation of Title VII and § 1981

#### 1. Exhaustion of Administrative Remedies

As an initial matter, Defendant argues that several allegations included in Claim One in the TAC were not exhausted through the EEOC charges and therefore should not be considered by this Court. (Doc. 73 at 10). Specifically, Defendant asserts: "Plaintiff raises several allegations that were not raised in either of her Charges, namely, that Caremark took away some of her job responsibilities, denied her access to programs she needed to perform her job, withheld her pay, and required her to use the exterior entrance to the workplace." (*Id.*).

"Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *abrogated on other grounds by Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541 (2019) (internal citations and quotations omitted). Courts may "consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.*

In Plaintiff's first EEOC charge, submitted September 25, 2017, she asserted that she was denied reasonable requests for accommodations and transfers. (Doc. 74-1 at 85–86). Plaintiff further explained that her manager instructed her to submit her resignation and quit after she requested accommodations. (*Id.*). Plaintiff asserted that she applied for several vacant manager positions, but Plaintiff's manager "block[ed] or obstruct[ed]" her from being promoted or transferred. (*Id.*). She believed that she was being discriminated

5

against due to race and disability and retaliated against for filing internal complaints. (*Id.*).

Plaintiff's second EEOC charge was submitted on August 7, 2019. (*Id.* at 88–89). Plaintiff asserted that she was disciplined despite having an accommodation for intermittent absences. (*Id.* at 88). She also stated that other employees were not terminated for making similar processing errors. (*Id.*) Finally, she asserted that she was discriminated against based on race and disability and retaliated against for "repeatedly requesting time-off," "complaining about disability-based discrimination," and "for filing a charge of discrimination." (*Id.* at 89).

The Court agrees with Defendants that the allegations in Plaintiff's TAC that "Caremark took away some of her job responsibilities, denied her access to programs she needed to perform her job, withheld her pay, and required her to use the exterior entrance to the workplace" were not exhausted through the EEOC charges. (Doc. 73 at 10; Doc. 48 at 4, 7, 8). Plaintiff's charges focused on her requests for leave as an accommodation, the alleged failure to transfer or promote Plaintiff, discipline and alleged retaliation in response to Plaintiff's approved absences, and her termination. (Doc. 74-1 at 85–86, 88–89). The allegations specified above are not reasonably related to the charges, nor are they "consistent with the plaintiff's original theory of the case." *See B.K.B.*, 276 F.3d at 1100. To the extent that Plaintiff brings claims under Claim One based on these allegations, the Court will not consider them.

## 2. Discrimination under Title VII and § 1981

In Claim One of the Complaint, Plaintiff asserts a claim for discrimination under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. § 1981.[2] (Doc. 48 at 7–8). Plaintiff asserts that she was "targeted and harassed as a person of color." (*Id.* at 7, ¶ 10).

---

[2] 42 U.S.C. § 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285 (1976). "Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). The Court will analyze the claims under Title VII and § 1981 together.

1  Specifically, Plaintiff appears to allege that the disciplinary infractions she received, her
2  termination, and the fact that she was not hired for the positions she applied for all resulted
3  from discriminatory treatment. (*Id.* at 6–9).

### a. Disparate Treatment

Defendant counters that Plaintiff has not made a *prima facie* discrimination claim. (Doc. 73 at 17–18). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show evidence of either discriminatory treatment or impact. *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1484 (9th Cir. 1993). Under a theory of discriminatory treatment, a plaintiff must provide evidence that a defendant had a discriminatory intent or motive. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988). In the absence of direct evidence of discrimination, the plaintiff may rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green* to establish a prima facie case of discriminatory treatment. 411 U.S. 792, 802 (1973). This framework requires showing that: (1) the plaintiff belongs to a protected class, (2) the plaintiff was qualified for the position or benefit, (3) the plaintiff was subject to an adverse employment action, and (4) similarly situated people were treated more favorably than the plaintiff. *Id.*; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Under the *McDonnell Douglas* framework, "[t]he requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Defendant asserts that Plaintiff has failed to establish the second and fourth element of a discrimination claim. (Doc. 73 at 17). As to the fourth element, Defendant argues that Plaintiff is unable to establish that similarly situated people outside of Plaintiff's class were treated more favorably. (*Id.*). Defendant relies on Brown's deposition testimony to show that Brown issued disciplinary infractions to other employees for absences and processing errors. (Doc. 73 at 17–18). Specifically, Brown issued formal coaching and counseling to three other Representatives who she supervised. (Doc. 74-3 at 5); (Doc. 74-3 at 40–41, 42–

7

44, 45–47, 49–50). One Benefits Representative was issued two Level I infraction for incorrect processing. (*Id.* at 40–44). Another Benefits Representative was issued a Level I infraction for a processing mistake. (*Id.* at 45–47). Finally, a Benefits Representative was issued a Level II infraction for incurring eight unscheduled absences. (*Id.* at 49–50). Defendant asserts that two of those Representatives are white, meaning they are similarly situated but outside Plaintiff's protected class. (Doc. 73 at 17–18). Plaintiff has not alleged, much less provided contradicting facts showing that others were treated more favorably. Because the facts are undisputed and Plaintiff has not made a *prima facie* showing of discrimination, Defendant is entitled to judgment as a matter of law.

### b. Failure to Promote

Next, Defendant asserts that Plaintiff has also failed to establish discrimination based on her failure to promote claims. To make out a *prima facie* case for failure to promote under Title VII, a plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff applied for and was qualified for the position she was denied; (3) the plaintiff was rejected; and (4) the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff. *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).

In the TAC, Plaintiff asserts that CVS supervisors and management "deliberately railroaded any internal, external transfer attempt that I was a qualified candidate for" and denied her "the opportunity to transfer to another location which is a standard practice and known widely across CVS platform." (Doc. 48 at 8, ¶ 15; *id.* at 9, ¶ 20). Plaintiff's claims are based on her applications for three positions for which she was not selected: a Pharmacy Supervisor Field Management position, a Customer Care Service Manager position, and a Customer Care Supervisor position, all located in Nashville. (Doc. 74 at 8, ¶ 42; Doc. 74-4 at 3). Defendant argues that Plaintiff was not hired for these positions because she lacked the necessary qualifications or a more qualified candidate was hired.

First, as to the Pharmacy Supervisor Field Management position, Defendant asserts

that Plaintiff cannot meet her burden on the second element because she was not qualified for the position. (Doc. 73 at 14). The Pharmacy Supervisor Field Manager position required a degree in pharmacy and the ability to "meet state specific licensure eligibility for a pharmacist." (Doc. 74-4 at 3, ¶ 6; Doc. 74 at 8, ¶ 43). Plaintiff does not have a pharmacy degree. (Doc. 74-4 at 9–10). Therefore, Plaintiff has not shown that she was qualified for the Pharmacy Supervisor position.

Next, Defendant argues that the Customer Care Service Manager and Customer Care Supervisor positions were filled by more qualified candidates who belong to the same protected class as Plaintiff and the employee selected had higher qualifications than Plaintiff. (Doc. 73 at 14). The candidates who were selected for these positions were both already employed in the role of supervisors. (Doc. 74-4 at 4–5, ¶¶ 14, 17; *Id.* at 56, 85). In contrast, Plaintiff was employed "in a lead role, which is below that of a supervisor." (*Id.* at 12). In addition, both of the candidates who were selected are African-American, meaning they are in the same protected class as Plaintiff. (Doc. 74-2 at 311, 314). Therefore, Plaintiff cannot establish the fourth element of her claim.

Defendant sets forth undisputed facts and has shown that Plaintiff has not made sufficient *prima facie* claims. Therefore, Defendant is entitled to summary judgment on Plaintiff's Title VII and § 1983 discrimination claims.

### B. Retaliation in violation of Title VII

In Claim Two, Plaintiff brings a claim for retaliation under Title VII based on her filing of internal ethics complaints and EEOC charges. Plaintiff alleges that Defendant "denied [her] opportunities" to transfer to another role within the company. (Doc. 48 at 9, ¶ 20). Plaintiff also alleges that "[a]fter filing the second charge of retaliation not even a week later [she] was terminated."[3] (Doc. 48 at 8, ¶ 18). To establish a *prima facie* case of

---

[3] Based on the facts before the Court, it does not appear that Plaintiff filed any complaint or charge in the week prior to her termination. As previously stated, Plaintiff filed internal complaints in 2016 and 2017. (Doc. 74-1 at 7). In addition, Plaintiff filed one charge with the EEOC while she was employed, on September 25, 2017. (Doc. 74 at 7). Plaintiff was terminated on July 9, 2019. (*Id.* at 6; Doc. 74-1 at 85). She then filed a second

retaliation, Plaintiff must show that: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) the two are causally linked. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). "If [Plaintiff] provides sufficient evidence to show a prima facie case of retaliation, the burden then shifts to the [defendant] to articulate a legitimate, non-retaliatory reason for its actions." *Id.* Then, if Defendant provides a legitimate reason, Plaintiff "bears the ultimate burden of submitting evidence indicating that the . . . proffered reason is merely a pretext for a retaliatory motive." *Id.*

### 1. Internal Complaints

First, Plaintiff alleges that she was not selected for the positions in Nashville because of internal complaints she filed in October 2016 and May 31, 2017. (Doc. 74-1 at 7; Doc. 74 at 7).[4] Defendant argues that Plaintiff's internal complaints do not count as a protected activity because "Plaintiff did not allege, in either of these complaints, that Caremark was subjecting her to discrimination based on her race or alleged disability." (Doc. 73 at 13). Defendant also argues that Plaintiff has not shown a causal link between the alleged protected activity and the adverse actions. (*Id.* at 18–19).

"An employee engages in protected activity for purposes of Title VII when he opposes conduct that he reasonably believes to be an unlawful employment practice, or when he participates in an EEOC investigation or proceeding." *Maner v. Dignity Health*, 350 F. Supp. 3d 899, 906 (D. Ariz. 2018). Protected activities may include "the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in any other activity intended to 'oppose[]' an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (citing 42 U.S.C. § 2000e–3(a)).

In Plaintiff's October 18, 2016 ethics complaint, she stated that her manager "told the individuals that he personally likes to apply" for an open position in the department.

---

EEOC charge on August 7, 2019. (Doc. 74-1 at 88).

[4] Plaintiff applied for the positions in Nashville on March 13, 2017, April 21, 2017, and August 9, 2017. (Doc. 74-4 at 3–4, ¶¶ 5, 10, 15).

10

(Doc. 74-1 at 156). In her deposition testimony, Plaintiff indicated that this complaint surrounded "favoritism." (*Id.* at 79). In her May 30, 2017 ethics complaint, Plaintiff again raised concerns about her supervisor, stating that he mistreats her and other employees. (*Id.* at 161–62). Specifically, Plaintiff described an incident where she felt that her supervisor was "trying to force her into resigning" after she informed of a leave request. (*Id.* at 162). Although these complaints do not directly allege race or disability discrimination, they describe employment practices that Plaintiff believed to be unlawful. *See Ekweani v. Ameriprise Fin., Inc.*, No. CV-08-01101-PHX-FJM, 2010 WL 481647, at *6 (D. Ariz. Feb. 8, 2010) ("An employee need not utter magic words to put his employer on notice that he is complaining about unlawful discrimination.") (citation omitted). The internal complaints constitute a protected activity.

However, the Court agrees that Plaintiff has not made the requisite showing on the third element of her retaliation claim: a causal link between the filing of the complaints and any adverse action. To show causation, Plaintiff must prove "by a preponderance of the evidence that the adverse employment action would not have occurred in the absence of the protected activity." *EEOC v. Evergreen All. Golf Ltd., LP*, No. CV 11-0662-PHX-JAT, 2013 WL 4478870, at *11 (D. Ariz. Aug. 21, 2013) (citing *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). Here, there are no facts before the Court that showing, by a preponderance of the evidence, that Plaintiff's internal ethics complaints were the cause of any adverse action she faced.

Even assuming Plaintiff could make a *prima facie* case of retaliation, Defendant argues that there are legitimate, nondiscriminatory reasons that explain why Plaintiff was not transferred or promoted, received disciplinary infractions, and was eventually terminated. *See Porter*, 419 F.3d at 894. As to the alleged failure to promote, Defendant explains that Plaintiff was either not qualified for the positions or more qualified candidates were ultimately selected. (Doc. 73 at 14). Regarding the corrective actions Plaintiff received, Defendant asserts that "Plaintiff repeatedly failed to meet the expectations of her position in that she had behavioral issues, exhibited excessive absenteeism (over and

beyond her protected time off from work) and demonstrated difficulties in completing her [verification] work accurately." (*Id.* at 17). With these facts, Defendant has offered legitimate, non-discriminatory reasons behind the actions that Plaintiff alleges were retaliatory. In assessing the last step of the burden shifting framework, Plaintiff has not provided evidence showing that these explanations are merely pretext. *See Porter*, 419 F.3d at 894. Because Plaintiff cannot prove that the alleged retaliatory actions were caused by the protected activities, the retaliation claims fails.

### 2. EEOC Charge

Plaintiff also appears to allege that she was retaliated against for filing a charge with the EEOC. (Doc. 48 at 8, ¶ 18). Plaintiff filed her first charge with the EEOC on September 25, 2017. (Doc. 74 at 7, ¶ 37). Defendant does not dispute that filing a charge with the EEOC is a protected activity or that Plaintiff suffered an adverse employment action. (Doc. 73 at 18–19). But Defendant again argues that Plaintiff has not shown that the EEOC charge "was a 'but for' cause of the alleged adverse action." (*Id.* at 18).

For the same reasons stated above, the retaliation claim based on the EEOC charge also fails. The evidence before the Court is undisputed, and Plaintiff has not shown that she suffered adverse action because of her EEOC charge. *See Porter*, 419 F.3d at 894. Even if she had, Defendant has provided legitimate, non-discriminatory explanations for the adverse actions. *Id.* Because the facts are undisputed and Plaintiff has not established the causation element of her claims, Defendant is entitled to summary judgment on these claims.

### C. Termination in violation of ADA

In Claim Three, Plaintiff brings a claim for "Termination of Employment in Violation of ADA, 42 USC § 12112(a)." (Doc. 48 at 9–10). The crux of her claim is that Defendant "terminate[d] [her] employment after [she] requested reasonable accommodation" of her disability." (*Id.* at 10, ¶ 26).

### 1. Termination

The ADA prohibits discrimination "against a qualified individual with a disability

because of the disability." 42 U.S.C. § 12112(a). "To prevail on her disability discrimination claim, [Plaintiff] must establish: (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, with or without reasonable accommodation, that is, able to perform the essential functions of the job; and (3) that the employer terminated her because of her disability." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 271 (9th Cir. 1996). "An employee bears the burden of proving that he was discriminated against 'because of' a disability." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 994 (9th Cir. 2007). Specifically, Plaintiff must show that the "adverse employment action would not have occurred but for the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019).

Defendant argues that Plaintiff has failed to establish the second and third elements of her disability discrimination claim. (Doc. 73 at 17). Defendants assert that Plaintiff was not performing satisfactorily in her role, as demonstrated through her absences and processing errors. (*Id.*). Indeed, as described in more detail above, the facts before the Court show several disciplinary infractions leading up to Plaintiff's termination. (Doc. 74 at 3–6). Plaintiff was terminated one day after Brown discovered that Plaintiff made a processing error and misquoted a patient's copayment. (*Id.* at 6, ¶¶ 30–32). Plaintiff has not provided the Court with any contradicting facts showing that she was terminated because of her disability. Therefore, Plaintiff has not established a *prima facie* case of disability discrimination, and Defendant is entitled to summary judgment.

### 2. Failure to Accommodate

In the Motion for Summary Judgment, Defendant also argues that Plaintiff has failed to establish a claim for disability discrimination based on the alleged failure to accommodate her disabilities. (Doc. 73 at 15–18). "Plaintiff's claim is that, although she was granted intermittent leave to attend medical appointments, she was later disciplined for dates which counted as authorized leave." (*Id.* at 15).

"The ADA defines discrimination to include an employer's failure to make a reasonable accommodation." *Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 799 (9th

Cir. 2017) (citation and alteration omitted). To make this claim, a plaintiff must establish that the employer failed to make reasonable accommodations for the plaintiff's disability. *See Piccarreta v. Harmony Hospice of Scottsdale LLC*, No. CV-12-00533-PHX-DGC, 2013 WL 6118641, at *2 (D. Ariz. Nov. 21, 2013); *Chapman v. Nev. Dep't of Transp.*, 3:25-CV-00061-ART-CLB, 2025 WL 854753, at *1 (D. Nev. Mar. 18, 2025). "Whether an accommodation is reasonable 'depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the potential accommodations.'" *Dunlap*, 878 F.3d at 799 (citing *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010)). Once the employer knows of the need for an accommodation, the employer must "engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations that will enable the employee to perform her job duties." *Id.* (citing *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001)).

Defendant asserts that it "did allow Plaintiff, as an accommodation, the ability to take eight hours of intermittent leave per month from January 8 to August 3, 2019, for purposes of attending medical appointments related to her depression, anxiety, and PTSD." (Doc. 73 at 16; Doc. 74-1 at 153–54). As a part of this accommodation, Plaintiff was also allowed to change her schedule to attend appointments with her manager's approval. (Doc. 74-1 at 153). Defendant asserts that Plaintiff agreed that the accommodation was sufficient. (*Id.* at 145). Defendant also argues that Brown "confirmed, prior to disciplining Plaintiff, that the absences which were ultimately included were not absences that had been approved as part of Plaintiff's leave case." (Doc. 73 at 16; Doc. 74 at 4, ¶¶ 13–18).

The facts show that one disciplinary attendance infraction was retracted for including authorized absences. (Doc. 74-1 at 44). Before issuing the next Level I infraction, Brown consulted with the reasonable accommodations partner "who had been assigned to Ms. Baymon's open leave case and confirmed that none of [the] absences had been approved as part of her leave case." (Doc. 74-3 at 3, ¶¶ 8–10). Brown did the same for the following attendance infraction that was issued as a Level II. (*Id.* at 3–4, 11–13). These

undisputed facts show that Defendant provided Plaintiff with reasonable accommodation through intermittent leave and did not discipline Plaintiff for using that leave. Therefore, Defendant is entitled to judgment as a matter of law on Plaintiff's failure to accommodate claim.

### IV.     CONCLUSION

For the reasons stated above, the Court will grant the Motion. There are no disputed issues of material fact. Defendant has also shown that it is entitled to judgment as a matter of law on all three of Plaintiff's claims. Therefore, Defendant is entitled to summary judgment, and the action will be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 73) is **granted**.

**IT IS FURTHER ORDERED** that this action be **terminated** and **dismissed with prejudice**.

Dated this 30th day of January, 2026.

Honorable Steven P. Logan
United States District Judge